## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JEFFREY M. YOUNG-BEY,               *

Plaintiff                           *

v                                   *          Civil Action No. JFM-15-3642

B.A. DADDYSBOY, COS, *et al.*,      *

Defendants                          *
                                 ***

### MEMORANDUM

Pending is a motion to dismiss, or, in the alternative, for summary judgment filed by defendants Commissioner of Correction Wayne Webb, WCI's Chief of Security Bradley O. Butler, Sgt. Jason A. Daddysman,[1] and Sgt. Lisa L. Lasher. ECF 32.[2] Plaintiff was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to the motion filed by defendants could result in dismissal of the complaint. ECF 33. Plaintiff sought and received extensions of time to file an opposition response (ECF 34-37) but did not file an opposition. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' motion, construed as a motion for summary judgment, shall be granted.

### Background

A.    Complaint Allegations

Plaintiff Jeffrey M. Young-Bey, a former state inmate then confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland, filed the instant verified complaint

---

[1] The Clerk shall amend the docket to reflect the full and complete names of defendants.

[2] Defendant Major Denny Mellot was not served with the complaint. The complaint against him shall be dismissed without prejudice.

on November 4, 2015. ECF 1, p. 1. He alleged that on October 15, 2015, he went to the medical unit at WCI for a scheduled sick call appointment. *Id.*, p. 3. He was seen by Nurse Dennis for his chronic illness involving his left pelvis and thigh, which plaintiff states was causing him significant pain and difficulty ambulating. *Id.*, p. 4. Plaintiff was advised that he would be scheduled to see the medical doctor as soon as possible and placed on the appointment log for infection control. *Id.*

Correctional Officer Daddysman was standing outside of the examination room and instructed the nurse not to schedule plaintiff for any appointments. *Id.* Plaintiff left the exam room. When he arrived at the officer's check in/out desk, he attempted to tell the desk officer that his clinic appointment had ended. Daddsyman, however approached plaintiff from behind shouting and yelling at another inmate (Hunter) and pushed plaintiff with his flattened palm pressed on plaintiff's back. *Id.*, pp. 4-5. As a result of the push, plaintiff states that he "suffered severe, extreme and excruciating pain in [his] left leg and pelvis." *Id.* p. 5.

Plaintiff states that defendants Graham, Webb, Butler, and Mellot knew that numerous complaints of assault and abuse of authority had been leveled against Daddsyman but they did not "do anything to stop, prevent, and/or investigate the merits of the complaints." *Id.* Plaintiff claims that Graham, Webb, Butler and Mellott, failed to protect him from the assault by Daddysman. *Id.*

Plaintiff alleges that he attempted to exhaust his administrative remedies but Daddysman and Lasher would not provide him ARP forms or permit his grievances to be processed. *Id.*

Plaintiff states that he filed the instant complaint based on claims of assault and battery, cruel and unusual punishment, denial of due process, interference with medical care, and failure

to supervise. *Id.*, pp. 6-8, 10. He seeks declaratory judgment and compensatory and punitive damages. *Id.*

B.    Defendants' response

WCI Lt. Brian Hammons called the internal investigation division on October 22, 2015, to report that he received a letter from plaintiff alleging he was assaulted by Daddysman on October 15, 2015, at approximately 9:55 a.m. ECF 32-2, pp. 3, 8, 11, 21-22. Plaintiff reported that Daddysman placed his palm on plaintiff's back and forcibly pushed him from the area as he was leaving the medical unit. *Id.*

Detective Sergeant Scott Peterson reported to WCI on November 12, 2015, to investigate the incident. *Id.*, p. 8. Tricia L. Wilson Office Secretary III provided Peterson a copy of plaintiff's letter and advised Peterson that no Serious Incident Reports ("SIRs") or Use of Force ("UOF") Reports were generated regarding the alleged assault. *Id.*

Peterson proceeded to Housing Unit ("H.U.") #5 where he interviewed plaintiff. *Id.*, p. 9. Plaintiff advised Peterson that on October 5, 2015, at approximately 9:55 a.m., he was leaving the Medical Department when Daddysman approached him from behind complaining about "motherfuckers this and motherfuckers that!". *Id.* Plaintiff stated that Daddysman pushed him and plaintiff stated that he, "just turned around and looked at him. I went out the door and went about my business." *Id.*, pp. 9, 11. Plaintiff specifically denied having fallen or being injured. *Id.* Peterson asked plaintiff what he would like to see come from the investigation. Plaintiff replied that he would, "like to be in a position where he and I have no contact. I want to be transferred." *Id.*, p. 9. Peterson asked plaintiff if he desired to pursue criminal charges against Daddysman but plaintiff declined. *Id.*, pp. 9 11.

3

Peterson interviewed Daddysman on November 18, 2015. *Id.*, p. 9. Peterson showed Daddysman a photograph of plaintiff. *Id.* Daddysman stated that he recognized the plaintiff by name but not by his photograph. *Id.*, p. 10. Daddysman indicated he did not recall having any interaction with plaintiff on October 15, 2015. *Id.* He also specifically denied having any physical contact with plaintiff on October 15, 2015, and generally denied the allegations against him. *Id.* He offered that the dispensary is very busy with several inmates present at one time. When Daddysman walks behind an inmate he puts his hand up, palm out, in the event the inmate back-ups, so the inmate does not back into him. *Id.*, p. 10.

Medical records demonstrate that plaintiff was seen in the medical department on October 15, 2015, at noon, for lower back and hip pain. ECF 32-3, pp. 2-3. The notes indicate plaintiff has a history of hip discomfort that was being treated with medication. The discomfort was not the result of an injury. A loud click in plaintiff's hip during range of motion exercises was observed. *Id.* Plaintiff's gait appeared normal. He reported clicking and popping to his left hip but was able to bear full weight. Plaintiff had orders for Indocin, muscle rub, Motrin, and Baclofen. *Id* He was encouraged to take his medication as ordered and engage in range of motion exercises as tolerated. *Id.* A referral to the provider for follow-up assessment was entered. *Id.*

Plaintiff was seen again on October 21, 2015. *Id.*, pp. 5-7. It was noted that he was seen on October 15, 2015, due to the same complaints of hip, pelvis, and thigh pain. Plaintiff walked with a limp and guarded his left leg. He was reassured that he would be seen by the provider. Plaintiff was concerned that his Motrin would run out and was provided a blister pack of ten pills. *Id.*

4

Plaintiff's medical records demonstrate that he subsequently received an MRI and physical therapy for his hip pain while incarcerated at WCI. *Id.*, pp. 10-19, 38-39, 43-44, 46-55, 60, 66-69, 75.

Plaintiff's ARP index demonstrates that on October 16, 2015, he filed ARP WCI #1775-15, alleging that he wanted to be moved out of H.U. #3 and housed in general population. ECF 32-4, p. 3. On October 31, 2015, the ARP was dismissed pending resubmission. Plaintiff was directed to define what he meant by "Separtee" and to explain how he was being denied due process and equal protection. *Id.* Plaintiff failed to resubmit the ARP. *Id.*

He filed ARP WCI #0451-16 on February 29, 2016, stating that he had given his typewriter to an officer on February 4, 2016, to be mailed out. *Id.* The property room received the typewriter on February 12, 2016, but the company claimed they never received it. Plaintiff withdrew the ARP on March 2, 2016. *Id.*

Russell A. Neverdon, Sr., Executive Director of the Inmate Grievance Office ("IGO"), avers that plaintiff has not filed any complaints or grievances with the IGO since January 29, 2014. ECF 32-5, ¶ 3.

Daddysman avers that he is familiar with plaintiff's allegations against him. ECF 32-7, ¶ 2. Daddysman avers that he was interviewed by Peterson regarding plaintiff's claim and that during the interview he was shown a photograph of plaintiff but did not recognize him. *Id.*, ¶ 3. He did recognize plaintiff's name. *Id.* He avers that he does not recall having any verbal interaction or physical contact with plaintiff on October 15, 2015. *Id.*, ¶ 4. Daddysman avers that the dispensary at WCI is busy and crowded with several inmates present at one time; it is possible he may have raised his hand with the palm out if plaintiff was about to step back or back up towards him. *Id.*

5

Daddysman denied ever interfering with plaintiff's medical care, treatment, or the scheduling of appointments for him. *Id.*, ¶ 6.

Daddysman and Lasher both deny ever denying plaintiff, or any other inmate, an ARP form. ECF 32-7, ¶ 5; ECF 32-8, ¶ 3. They each aver that they have never interfered with an inmate's access to the ARP process or prevented an ARP from being processed, including any ARPs filed by plaintiff. *Id.*

## Standard of Review

### A.    Motion to Dismiss

The purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's Complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

### B.    Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

6

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

7

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

A.    Failure to Exhaust

Defendants raise the affirmative defense of non-exhaustion and assert the complaint must be dismissed pursuant to 42 U.S.C. §1997e.    Inmates are required to exhaust "such administrative remedies as are available" before filing an action.  42 U.S.C. § 1997e(a), *see also Ross v. Blake*, _U.S._, 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). The statute provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)

This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[A]n administrative remedy is not

considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Jones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones,* 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725.

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md Regs. ("COMAR"), tit. 12

§07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO)"). *See* Md. Corr. Servs., Code Ann. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. §10-207(b)(1); *see* COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Corr. Servs., Code Ann. §10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Cts. & Jud. Proc., Code Ann. §10-208(c); COMAR tit. 12 §07.01.07-.08. The conduct of such hearings is governed by statute. *See* Md. Corr. Servs., Code Ann.. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Corr. Servs., Code Ann. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Corr. Servs., Code Ann. §10-210. An inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

In his complaint plaintiff baldly states that Lasher and Daddysman prevented him from exhausting his administrative remedies. The facts demonstrate that although plaintiff initiated the ARP process, he failed to resubmit his ARP as directed, file an appeal, or to pursue his remedies before the IGO. Plaintiff was directed to resubmit an ARP with additional information, but rather than attempting to cure his deficiencies, or explain why he could not comply with the directive, he simply abandoned the process.

The record evidence is clear that plaintiff had access to the ARP process. His bald allegation that his access to the ARP process was thwarted is unavailing as he provides no specific information in support of this claim. He does not explain why he failed to resubmit the ARP as directed, nor does he explain his failure to take his grievance to the appellate or IGO levels. In light of the foregoing, each of plaintiff's claims against correctional defendants is subject to dismissal for failure to exhaust administrative remedies.

Even if plaintiff had properly exhausted his claims, defendants would still be entitled to summary judgment for the reasons that follow.

B.      Supervisory Liability

To the extent plaintiff intended to hold Warden Richard J. Graham, Jr., former Commissioner of Correction Wayne Webb, and Chief of Security Bradley O. Butler liable as

11

supervisors, his claim fails. It is well established that the doctrine of *respondeat superior* does

not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no

*respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on

ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v.

Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.

1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the

supervisor had actual or constructive knowledge that his subordinate was engaged in conduct

that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

(2) the supervisor's response to the knowledge was so inadequate as to show deliberate

indifference to or tacit authorization of the alleged offensive practices; and (3) there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury

suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Where, as here,

a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a

constitutional injury, the claims against supervisory personnel must be dismissed.

C.    Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look

at the need for application of force; the relationship between that need and the amount of force

applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates

as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Daddysman offers that to the extent any force was used against plaintiff, it was the mere raising of his hand with is palm extended to prevent plaintiff from stepping back into him. ECF 32, Ex 6, ¶ 4; Ex 1, pp. 9-11. No serious incident or use of force reports were generated as a result of the alleged incident. Plaintiff denied falling or being injured as a result of the encounter. He was examined by medical staff hours after the alleged incident and denied recent injury. *Id.*, Ex 1, p. 3, pp. 21-22, Ex. 2, pp. 2-3. In light of the record evidence before the court, any force used by Daddysman was minimal to prevent plaintiff from walking into him. No injury resulted. There is simply no evidence that Daddysman acted maliciously or sadistically and as such, he is entitled to summary judgment.

D.    Failure to Protect

In order to prevail on an Eighth Amendment claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825,

13

833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016), citing *Farmer*, 511 U.S. at 832. Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). Failure to take any action in an ongoing assault, however, can amount to deliberate indifference. *See Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997).

Plaintiff alleges that Defendants Warden Richard J. Graham, Jr., former Commissioner Wayne Webb, Chief of Security Bradley O. Butler and former Shift Supervisor, Major Denny Mellot failed to protect him from Daddysman. ECF 1. Again there is simply no evidence that plaintiff was assaulted by Daddysman. Plaintiff offers no factual support for his bald allegations that Daddysman presented a risk of harm to him and that the other named defendants were aware of the risk but took no action. In light of the foregoing plaintiff's claim of a failure to protect is

15

subject to dismissal.

E.    Equal Protection

Other than indicating in the caption of the complaint that he was denied equal protection, plaintiff offers nothing in support of this claim, and the claim shall be dismissed.

F.    Due Process

Plaintiff alleges he was denied due process by Daddysman. He does not explain this allegation. The court can find no plausible due process violation and the claim shall be dismissed.

To the extent plaintiff alleges defendants violated their own policies, his claim fails. Principally, he fails to indicate what policy was violated. Moreover, to the extent that written directive were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); Weller v. Dept. of Soc. Services, 901 F. 2d 387 (4th Cir. 1990) (a mere violation of State law or regulation does not provide a basis for a due process violation.)[3]

G.    Medical care

As to plaintiff's claims regarding interference with medical care, the Eighth Amendment of the United States Constitution governs the analysis. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal

---

[3]Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To sustain a claim for denial of medical care under the Eighth Amendment, plaintiff must show that defendants' acts or omissions were done with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Importantly, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). This is so because the Constitution "is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Id.* at 695–96.

The deliberate indifference standard regarding a serious medical need requires that plaintiff demonstrate that objectively he was suffering from a serious medical need, and that, subjectively, the prison staff were aware of that need but failed to either provide treatment for plaintiff or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff must also demonstrate that the Medical Defendants behaved with "subjective recklessness" in the face of his serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Put differently, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."

*See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) ("[A] court must focus on the precautionary actions actually undertaken by an official in response to a risk . . . not those actions which could have been taken"). For plaintiff to prevail, the treatment rendered "must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence or malpractice does not rise to the level of a constitutional violation. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)). "The right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (emphasis added).

The Fourth Circuit has identified two slightly different aspects of a correctional official's state of mind that must be shown in order to satisfy the subjective component in the context of medical care. First, actual knowledge of the risk of harm to the inmate is required. *Young v. Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland,* 372 F.3d

18

294, 303 (4th Cir. 2004) ("It is not enough that the officer should have recognized it."). Beyond such knowledge, however, the officer must also have "recognized that his actions were insufficient" to mitigate the risk of harm to the inmate arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Here, there is no evidence that Daddysman interfered with the provision of medical care to plaintiff alleged. Even if Daddysman told medical staff not to schedule plaintiff for any further appointment as alleged, plaintiff's uncontradicted medical records demonstrate that he continued to receive medical care for his complaints of him pain, including analgesic medication, diagnostic testing and physical therapy. Correctional defendants have no direct personal involvement in plaintiff's medical care or the provision of medical equipment. The record evidence is simply devoid of information to support plaintiff's claim that correctional defendants were in any way deliberately indifferent to his needs. Correctional defendants are therefore entitled to summary judgment.

H.    ARP process

To the extent plaintiff alleges there were problems with the processing of his ARPs, his claim likewise fails. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. As discussed, the PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id.* at 681. To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id.* at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Plaintiff has not alleged, much less demonstrated, any injury as a result of any failure to process his ARPs. Rather than correctional staff interfering with his ARPs, it was plaintiff who failed to participate in the process. His ARP was returned to him for supplementation, but he declined to follow the directives provided to him and his claims were dismissed.

I.      Harassment/Threats

Plaintiff's claims of verbal harassment are also unavailing. Verbal abuse of inmates by guards, without more, states no claim of assault. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *see also Carter v. Morris*, 164 F.3d 215, 219, n 3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). The insults alleged in this case are not condoned by this court, but fall short of acts forbidden by the constitution. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

## CONCLUSION

For the foregoing reasons[4] defendants' dispositive motion, treated as a motion for summary judgment, will be GRANTED and judgment will be ENTERED in favor of defendants and against plaintiff. A separate Order follows.

_August 10, 2011_
Date

_J. Frederick Motz_
J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2011 AUG 10 PM 3: 43
CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY

---

[4] Having found no constitutional violation, the court need not address defendants' claims of qualified immunity.